# APPENDIX E

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc. SUPERIOR COURT

STATE OF RHODE ISLAND )
)
VS. ) P2/95-0125
)
ADRIAN BUSTAMANTE )

97 JAN -8 PM 1:56
SUPERIOR COURT
CLERK'S OFFICE

SENTENCING

BEFORE THE HONORABLE MR. JUSTICE JOHN F. SHEEHAN

MAY 31, 1996

APPEARANCES:

LINDA SOCCIO, ESQ. .............. FOR THE STATE OF RHODE ISLAND
SPECIAL ASSISTANT ATTORNEY GENERAL

DALE ANDERSON, ESQ. .............. FOR THE DEFENDANT BUSTAMANTE
ASSISTANT PUBLIC DEFENDER

WILLIAM F. FAHEY, ESQ. .............. FOR THE DEFENDANT BELLOLI

********

GAIL A. DeALMO, RPR
COURT REPORTER

97-32 CA.

5 of 5

# C E R T I F I C A T I O N

I, Gail A. DeAlmo, hereby certify that the succeeding pages, 1 through 16, inclusive, are a true and accurate transcript of my stenographic notes in the matter of State of Rhode Island v. Adrian Bustamante, P1/95-1200A, heard before Mr. Justice John F. Sheehan, for sentencing, on May 31, 1996.

Gail A. DeAlmo

Gail A. DeAlmo, RPR

Court Reporter

MAY 31, 1996

MORNING SESSION

(DEFENDANTS PRESENT)

THE COURT: Good morning, ladies and gentlemen.

THE CLERK: The case before the court is P1/95-1200A, Adrian Bustamante and P1/95-1200B, Carlos Belloli. Will counsel identify themselves for the record and the parties they represent, please.

MISS SOCCIO: Cindy Soccio for the State.

MR. ANDERSON: Dale Anderson for Bustamante.

MR. FAHEY: William F. Fahey for Carlo Belloli.

THE COURT: Does anyone wish to put on testimony?

MISS SOCCIO: No, Your Honor.

MR. ANDERSON: No, Your Honor.

MR. FAHEY: No, Your Honor.

THE COURT: Okay. I'll hear you, Mr. Anderson.

MR. ANDERSON: Your Honor, the matter before the Court is sentencing pursuant to Rhode Island statute that allows the judge in certain circumstances to impose in certain circumstances life without parole. As I understand the statute and the case law, the Court is not bound by the jury's finding of aggravated circumstances, and in fact can decide in the exercise of its independent judgment as to whether they do not apply to one defendant or both. Even if the Court accepts the

jury's finding in that regard, the statute suggests and requires that the Court consider the nature and circumstances of the offense, and the personal history, character, record, and propensities of the defendant that are relevant in deciding the appropriate sentence. It's been the position of Adrian Bustamante from the beginning of this case, Your Honor, that although he was present he did not participate in the killing of John Casserly. Evidence to the contrary was presented, as the Court will recall, by two juvenile witnesses, one of whom, at least, admitted participating himself. So as is consistent, I suggest, with Mr. Bustamante's statement in the presentence report, that he was surprised that the evidence presented was deemed credible enough to result in his conviction, and he nonetheless expressed considerable sorrow for the victim and the victim's family, I think that the matter of the extent and degree of participation is still relevant, Your Honor. We all know that in the guilt phase, a defendant is liable if he participates in the acts of others. Whether that applies in the statute having to do with aggravating circumstances is not a question that's been specifically addressed. That is, whether the words in the statute, the murder committed by him, whether he is liable under aggravating circumstances for

acts of others. And I would just remind the Court that in this case there was a distinction. Even if we were to accept the testimony of the two juveniles, most specifically, and again this of course does not go to guilt but to the aggravated circumstance, most specifically my recollection, the eyewitnesses claimed Mr. Bustamante was wielding either, quote, a little steak knife or a small pocket knife, certainly not the kind of knives that caused the four and-a-half to seven and-a-half inch deep fatal wounds. Not the knife introduced in evidence, and not the so-called survival knife that was described. And certainly the State must agree that a degree of participation is relevant in this matter, inasmuch as the State reached agreement with two of the participants, one the main witness serving two and-a-half to five years at the Training School, and the other Luis DeJesus doing ten years for assault with a dangerous weapon.

The fact is that Mr. Bustamante, I think this was mentioned in the presentence report too, could have walked into the Woonsocket police station until -- up until Sunday, and he would have, I suggest, walked in there without a trace of evidence on him, and he would have been a witness, and he wouldn't even have been charged. He didn't do that; needless to say he regrets

not doing that, which has something to do with the other theme in this case.

Mr. Bustamante doesn't know anyone down here. He came originally from Texas. He moved to New England to start a new life. He was the outsider. The picture that emerges is that he's not a confident man. He doesn't have the nerve to walk in the police station to be a witness. But he's a peaceful man. It's not known in Rhode Island, but the Court has the benefit of some letters of people who have gotten to know him in New England, both workers and co-workers, and his fiance Lisa Welch's family. He runs from confrontation; he avoids trouble. His personal history is otherwise unremarkable for any history of violence whatsoever. Whatever minor criminal record he had, had to do with simple possession of controlled substances.

I think that the sentence, the most serious sentence Rhode Island law provides, life without parole, ought to be preserved for cases in which there is no doubt of the defendant's guilt of first degree murder, and no doubt similarly of his culpability for the aggravating circumstances. In this case there was not classic evidence of premeditation. There was, if the jury's verdict -- as the jury's verdict has been upheld, it would have been just barely more than a mere moment.

The circumstances seem to suggest rather kind of an impulsive act, and there is, as I repeat, plenty of culpability to go around in this case. I just don't think that the Court can conclude that Mr. Bustamante is so mortally inferior to his accuser to justify a sentence of life without parole for him.

That's all, Your Honor.

THE COURT: Okay. Miss Soccio, do you want to respond?

MISS SOCCIO: Your Honor, I prefer to wait for both defense counsel.

MR. FAHEY: Good morning on behalf of Mr. Belloli. You read the presentence report. He's accepted responsibility for some of the acts that occurred that night. Without reiterating the statute Mr. Anderson described, Your Honor, the decision you have to make is whether to impose life with parole or life without parole. I suggest in this case it be life with parole, Your Honor. As Mr. Anderson asserted, this was more from the evidence we heard of a spontaneous or impulsive act. There was no premeditation, Your Honor, that was directly introduced into evidence, Your Honor, and for that reason, Your Honor, I don't believe it comes within the cases that my sister has cited, the cases that call for a life without parole sentence, Your Honor.

When you're looking at Mr. Belloli's character, Your Honor, I've introduced certain letters from family members and workers that he's worked with, Your Honor. I think one evidence of his character that you have to consider, Your Honor, is the fact that despite the fact that he was released on bail, he showed up each and every time, Your Honor. And when the jury was deliberating, Your Honor, when it was questionable that he would leave the jurisdiction, Your Honor, when you said to him, "Will you show up tomorrow?" He said, "Yes." And in fact he did that, Your Honor. I think you have to consider that fact in terms of whether or not he can be rehabilitated, Your Honor, and whether or not you should not give him a chance with a sentence of life with parole, Your Honor.

Mr. Belloli, Your Honor, is 39 years of age, Your Honor. He's been working all his life. He worked for the Massachusetts Water Resource Association for 17 years as a heavy equipment operator. Prior to that he worked for American Optical. He has four children -- 3, 4, 1 and 5 years old. He's a lifelong resident of Framingham, Massachusetts. His record shows no real history of violence. This is an isolated incident.

You also heard testimony of the use of alcohol and drugs. In the presentence report Mr. Belloli accepts

the fact and says he does have an alcohol problem, Your Honor. I think that again relates to your decision, Your Honor, whether or not to impose a sentence with parole or without parole, Your Honor, the fact that alcohol and drugs were at the core of these horrific acts that occurred. Again there was no premeditation. They were impulsive, and the impulsive part was caused by alcohol and drugs. For all those reasons I ask, in your wisdom and deferential treatment, Your Honor impose a sentence of life with parole for Mr. Belloli.

THE COURT: Miss Soccio.

MISS SOCCIO: Your Honor, this is John Casserly. This does not look like the picture --

THE COURT: I don't want to see pictures. Someone did that to me once.

MISS SOCCIO: Well the family provided me with this, this morning. I thought at least I'd show it to the Court for the limited purpose that the pictures that the jury got to see, and Your Honor got to see, do not reflect the John Casserly as his family and friends knew him. Mrs. Casserly also provided me with a letter that was written by a friend of John Casserly that describes what type of a person he is. Throughout the trial the jury did not get a chance to see or hear about what the victim is like. Throughout the trial we get to hear

about the conduct, and at this time we get to hear about the qualities of these defendants from their attorneys. But the victim never gets to be known by the Court or by the jurors. This friend describes John in this incident. "Looking for something to do, John and I find ourselves in the limerock quarries in Lincoln. There was this one bluff that stood above all others. Looking down from it we decided best to skip that particular dive. There was a group of younger teens sitting besides this bluff egging us on to make the jump. Being smarter than proud, we ignored comments and sat away. Not long after a young girl from the egging crowd attempted the jump. She hurled through the air and hit that water in a sitting position so hard she lay face down floating in the quarry's water. The ledge we were sitting on was not for jumping from. It was a nook, the part of the quarry that collected residue and debris. It was John who jumped into the water and swam to her, and I remember his voice. "Are you all right?" I will miss my dear friend."

Your Honor, this is the person that these two defendants took away from the Casserlys on December 2 of 1994. This is the John that was stabbed 27 times by these two individuals. He was murdered at the age of 24. It was a brutal and gruesome slaying that took

place over an hour. Now we can sit here and wait and see how long an hour is, but I don't think that's necessary. But if you can imagine for a moment, this stabbing 27 times; being hit over the head with a beer bottle. You can imagine the pain that was inflicted, and that pain obviously was believed by the jury when they found that there was torture and aggravated battery. It was Adrian Bustamante who beat John Casserly, kicked him and stomped him, along with Rene Gorman, who testified to that. It was Carlo Belloli who smashed a beer bottle over John Casserly's head. It was Carlo Belloli who took the time to go into the other room to get the knife and the sheet and use that knife to stab John Casserly. It was Carlo Belloli who then, after dumping the body, went back to his house at 181 Paradis Avenue, cleaned that knife, and put it back in the closet where it belonged to him. It was Adrian Bustamante who helped, according to Chucky Roy, helped with the clean up. It was Adrian Bustamante who also drove those juveniles back, back to their homes in Milford so that they could go to school. It was Adrian Bustamante, along with Charles Roy, who threatened these juveniles not to say anything. It was Adrian Bustamante, who after taking these juveniles back to their homes, then took off for Vermont. It was Adrian

Bustamante who kicked and screamed in the police car back to Rhode Island because he didn't want to come back to face the charges. It was Carlo Belloli, who, after John Casserly was murdered, dragged John's body down the stairs, along with Charles Roy, and put it into his van. It was Carlo Belloli who had John's blood on his hands, and it was Adrian Bustamante who had the time to wash that blood from his hands so no one could find it on him on the way back from Vermont. It was Carlo Belloli who drove that van, who drove the van with Luis DeJesus and Rene Gorman. It was Carlo Belloli who drove that van and allowed the head of John Casserly to hit the cement. It was Carlo Belloli who dumped the body off in the street in Bellingham. It was Carlo Belloli who proudly made comments to individuals at the courthouse as to what he did and how it happened, and how he was quoted, quote, "pissed off." It was Carlo Belloli who, when John Casserly was saying, "Stop, I can't breathe," it was Carlo Belloli who took a blanket and said, "Here, bleed on this." It was Carlo Belloli who instructed Chucky Roy to help him clean up, a juvenile 14 years old. It was Adrian Bustamante who gave a knife to Timmy Gorman, at the age of 12, and told him do what you got to do. You heard the testimony from Timmy Gorman. The effects of this crime on these

juveniles will never be known by this court. We can only imagine what impression this has made. This is another factor Your Honor has to consider. The fact that not only the community of Woonsocket, not only the people in this jurisdiction, but these juveniles in Massachusetts are looking to see what happens when adults commit these kinds of crimes, and particularly when they force, or are in a position where they have to witness this kind of brutality.

I recognize the fact that Carlo Belloli, at the age of 38, in terms of a record, he had a prior simple assault that was filed. However, I am appalled at some of the statements that he made in the presentence report. How he can say at one point that he is not guilty, and on the other hand say that he assumed some responsibility but not primary responsibility for the death. That's ludicrous. It took place in his house over a period of time, and he tried to hide the evidence and clean up his own apartment. It says he was in a state of panic. He was guilt ridden and under the influence when he disposed of the body. But yet he wasn't so under the influence he wasn't able to drive to Bellingham and thereafter return to his home and start cleaning up.

I recognize the fact that Adrian Bustamante is 31

years old. Mr. Anderson makes reference to the fact that there was some doubt as to the premeditation. That there was some doubt as to the guilt of his client. There was no doubt. The jury spoke after three and-a-half hours, and they also took a very limited amount of time to decide the issue of torture and aggravated battery. He didn't have the nerve to turn himself into Woonsocket police. I wouldn't call it nerve, Your Honor. He didn't feel any remorse. He didn't feel any responsibility. He came back -- he was driven back to Rhode Island kicking and screaming. He's an admitted drug user. He spent time both in New Hampshire and Florida for drug offenses, cocaine and marijuana, and he says he is innocent. All over a hundred dollars, Your Honor. The hundred dollars that came from Carlo Belloli. The hundred dollars that John Casserly took to go and buy more drugs so that they could share in the use of the cocaine. It was Adrian Bustamante who made John, along with Rene Gorman, get back into that van and go back to 181 Paradis Avenue to face the music, and it was at that point that Carlo and Adrian Bustamante took revenge on John Casserly, over a hundred dollars.

In light of all these facts, Your Honor, there are no mitigating circumstances. Neither one of these

individuals turned themselves in or cooperated with the police. It's so easy for them at this time, and throughout the trial, to point the finger at Charles Roy; to blame these juveniles for doing something that took place at their hands and in Carlo Belloli's apartment. In light of all that, Your Honor, I ask you sentence both defendants to life without parole, and ten years consecutive on the conspiracy charge.

THE COURT: Ten years consecutive to life without parole?

MISS SOCCIO: Yes, Your Honor.

THE COURT: Mr. Bustamante, do you wish to say anything before I impose sentence?

MR. BUSTAMANTE: Yes, Your Honor, I would. First of all let me start by saying my condolences go to the Casserly family. You know, I am truly sorry for what happened to John. I'm sorry for the pain you have to endure. I wouldn't wish that pain on anyone, along with the pain John felt that dreadful night. I still maintain my innocence, Your Honor. I've never denied that I was there. Maybe I should have gone to the police myself, but that's something I'll have to live with for the rest of my life. If I'm guilty of anything, I'm guilty of not reporting the crime, but not murder -- let alone first degree murder. I would never

hurt anyone like that. I'm not a fighter. Especially killing a guy. Normally you would see what I do. I help people. You know. I'm not a vengeful person. Even through this whole ordeal I still don't hold any animosity towards anyone, even those who lied against me on the stand to get a lighter sentence or to keep their freedom in exchange for their false testimony.

If I can, I'd like to address the following to the Court. Miss Soccio, I like the speech you just did, but I think it's still outrageous for the speech you just done. That does not describe me, not whatsoever. You heard throughout the trial there was never any evidence of me doing this horrible crime; besides, the kids, they had everything to gain by lying. We ought to stop to think a little bit. If I had stabbed John even once or twice, there would be some kind of blood on me in one form or another. We all found out there wasn't. That's not, you know, from everybody else -- Charles Roy, little Chucky, Rene, Luis DeJesus, everybody else had blood on them in one form or another. Their sneakers. There was no blood on me. If I had done something I would have blood on me. I am sorry for what happened to John, and I am very sorry for the pain I -- I don't know how to say it. I can't express it enough. But I can't apologize for something I didn't do. I was at the wrong

place at the wrong time. I only ask this Court to please have mercy on me. My problem has always been drugs, Your Honor. And if this is the way to keep me off of them, then so be it. But this is God's work. I only pray for leniency so I can get back to being a productive member of this society, which I was before being arrested. I feel bad, but I'm a human being also and I also have a family that hurts and that's having a difficult time coping with me being inside. And I have a fiancee sitting in the back, praying every day, going to church every Sunday, and hoping that this nightmare will be over. All this has been a nightmare to me. I've never been involved in anything like this in my life. I don't know what else to say. I just ask for mercy and some leniency, Your Honor. And I truly am sorry for your son and the pain that you're feeling. That's all I have, Your Honor, thank you.

THE COURT: Thank you. Mr. Belloli.

MR. BELLOLI: Respectfully I have nothing to say.

THE COURT: I'll take a fifteen minute recess.

(RECESS)

(COURT RECONVENED; DEFENDANTS PRESENT)

THE COURT: Do any of the victim's parents or members of the family want to speak to me?

MISS SOCCIO: No, Your Honor.

THE COURT: They have the right to do it.

MISS SOCCIO: No, Your Honor.

THE COURT: Mr. Bustamante, do you have anyone you want to speak for you?

MR. BUSTAMANTE: No, Your Honor.

MR. BELLOLI: Respectfully, no.

THE COURT: At best, these cases are very difficult. At least they are for me. The Court's impressed by Mr. Bustamante's addressing the Court. But I can't help recalling the testimony. There were 27 stab wounds; and encouraging babies -- well, one wasn't a teenager even, to participate in this type of activity on both these defendants' parts.

Mr. Bustamante, on Count 1, the Court sentences you to life imprisonment. That shall be without parole. On Count 2 the Court sentences you to ten years at the Adult Correctional Institution. That is to run concurrent. Mr. Belloli, on Count 1 the Court sentences you to life without parole. On Count 2 the Court sentences you to ten years. That will be concurrent with the sentences you are presently serving. You both have objections.

(ADJOURNED)